# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-1853NE

_____

| | | |
|---|---|---|
| Imageware, Inc., Nebraska | * | |
| Corporation, doing business as | * | |
| Cottonwood Communications, and | * | |
| Richard Dahlgren, an Officer and a | * | |
| Director of Imageware, Inc., | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| U.S. West Communications; | * | |
| U.S. Marketing Resources Group, Inc., | * | On Appeal from the United |
| doing business as U.S. West Direct; | * | States District Court |
| U.S. West, Inc.; U.S. West | * | for the Southern District |
| Communications Group, Inc.; | * | of Iowa. |
| Interactive Video Enterprises, Inc.; | * | |
| U.S. West Interactive Services, Inc.; | * | |
| U.S. West Multimedia Communications, | * | |
| Inc.; U.S. West:  Multimedia Services | * | |
| Group, Inc.; U.S. West Advanced | * | |
| Technologies, Inc.; U.S. West Business | * | |
| Resources, Inc., Colorado | * | |
| Corporations; U.S. West Enhanced | * | |
| Services, Inc., a Washington | * | |
| Corporation; and U.S. West Multimedia | * | |
| Services of Omaha, Inc., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: April 13, 2000
Filed: July 25, 2000
_____

Before RICHARD S. ARNOLD, ROSS and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.
_____

RICHARD S. ARNOLD, Circuit Judge.

This is a contempt proceeding arising out of an action under the antitrust laws brought by Imageware, Inc., and others against U.S. West Communications, Inc., and others. For a description of the underlying case, in which the defendants, whom we shall call U.S. West, prevailed, see Mostly Media, Inc. v. U.S. West Communications, 186 F.3d 864 (8th Cir. 1999). In the proceeding now before us, the District Court held Imageware and one of its principals, Richard Dahlgren, in civil contempt for violating a court order protecting certain documents produced during pretrial discovery. Imageware and Mr. Dahlgren appeal. Imageware does business as Cottonwood Communications, and we shall therefore refer to appellants as Cottonwood, in accordance with the convention they have adopted in their brief.

The case turns on the meaning of the court order in question, so we shall begin by describing it. Early in the discovery process, Cottonwood had served subpoenas in an attempt to obtain various documents. U.S. West filed a motion to quash the subpoenas, and for the entry of a protective order. After hearing, the motion to quash was denied, but a protective order was entered governing all material produced by either party and labeled either "Confidential - Attorneys Only Information" or "Confidential Information." The present controversy concerns documents bearing one or the other of these labels.

The relevant paragraphs of the protective order are the following:

4.      Limitations on Use

Confidential Information and Confidential - Attorneys Only Information may be used by the persons properly receiving such material only for the purpose of preparing for and conducting pretrial and trial proceedings in this action and for no other purpose.

*   *   *   *

9.      Use at Trial

Any Confidential Information or Confidential - Attorneys Only Information, which is designated to be introduced at trial by any party at least 10 days in advance of trial, may be offered into evidence in open court unless the Designating Party obtains an appropriate protective order from the Court.   The party proposing to introduce the Confidential Information or Confidential - Attorneys Only Information must give at least 10 days notice to the Designating Party and a sufficient opportunity for the Designating Party to seek such a protective order.  Designation of the Confidential Information or Confidential - Attorneys Only Information is [sic] a final pretrial order in a manner that clearly provides notice that such Confidential Information or Confidential - Attorneys Only Information may or will be introduced at trial shall be sufficient notice under this paragraph.

*   *   *   *

14.     Continuing Effects

After the termination of this action, this Order shall continue to be binding upon the parties thereto and all persons to whom Confidential Information or Confidential - Attorneys Only Information has been disclosed or communicated.  In the event that this action or any portion thereof is transferred to another judicial district pursuant to order of the Court, this Order shall continue in full force and effect for any portion of the case not transferred and for any portion transferred until modified or vacated by the transferee court.

Appellants' Addendum 3-4.

We next recount what Cottonwood did. At trial, certain documents (and only documents in this category are at issue here) were offered in evidence by Cottonwood. In accordance with the procedure set out in paragraph 9, quoted above, U.S. West was given an opportunity to seek a protective order, to prevent the reception into evidence of these documents in open court. No such order was sought, and the documents were freely introduced in open court and published to the jury. Any discussion of the documents that took place at the trial was in the open, and presumably any person present at the trial (attendance at which was not restricted) could have requested and received access to the documents. After the trial, these documents were kept in the office of the Clerk of the District Court. In addition, other documents, not offered into evidence in open court, were kept separately by the Clerk, under seal and in a vault, these documents being clearly subject to the continuing-effects provision of paragraph 14.

After the trial, Richard and Laurie Dahlgren, both officers of one or more of the corporate plaintiffs, sought to review the court record for the purpose of obtaining copies. Permission was arranged through the chambers of the trial judge. The Dahlgrens went to the Clerk's office and met with a deputy clerk. They were given access to the documents. They did not request, nor did they receive, any access to documents still under seal. A deputy clerk told them that attorneys and any member of the press would be able to look at the records, including the documents viewed by the Dahlgrens. Later, Ms. Dahlgren picked up and paid for copies of the documents from the Clerk's office. Then, in a filing before the Federal Communications Commission, Cottonwood included 16 documents that had been produced by U.S. West under the original protective order, all 16 of which had either been received into evidence at the trial, or had been marked as exhibits in the Joint Exhibit list, access to which list had been afforded to the Dahlgrens by the deputy clerk. Thus, the

documents filed with the FCC had all been initially marked as confidential under paragraph 4 of the protective order, and had all either been offered in evidence in open court or marked as exhibits for that purpose. U.S. West had not availed itself of the paragraph 9 procedure to obtain a further protective order with respect to any of these particular documents.

The District Court held Cottonwood in contempt and imposed a civil sanction in the amount of $4,543.50, the amount found by the District Court to have been reasonably expended by U.S. West in connection with its motion for an order of contempt. (The amount is not in question here – only the propriety of the contempt finding itself.) In addition, to protect U.S. West against any further violations of the protective order, the District Court required Cottonwood to post a $4,500.00 "contempt bond."

The reasoning in support of these actions is simple: the documents were initially produced under paragraph 4 and labeled "Confidential" or "Confidential - Attorneys Only Information." Accordingly, by the express terms of that paragraph, they could be used "only for the purpose of preparing for and conducting pretrial and trial proceedings in this action and for no other purpose." Further, by the express terms of paragraph 14, paragraph 4 continued in full force and effect after the termination of the case. If that were all there is to the matter, we should have no difficulty affirming the actions of the District Court. But there is more: specifically, paragraph 9. Under that paragraph, certain of the documents were lawfully introduced at trial in open court. U.S. West had available to it a procedure by which it could have obtained an appropriate protective order, for example, providing that the documents would be shown to the lawyers, jurors, and judge only, and would thereafter remained sealed. U.S. West took no such action.

So how should the order be interpreted? Cottonwood argues that once documents are introduced into evidence in open court, and especially when, thereafter,

they are kept in a public file in the Clerk's office open to anybody, including the press, it makes no sense to say that anyone, including a party to the case, could obtain copies of the documents, but could not show them to anybody else. <u>National Polymer Products v. Borg-Warner Corp.</u>, 641 F.2d 418 (6th Cir. 1981), among other authorities, is cited. There, certain documents were subject to a protective order which prohibited their dissemination. The order provided that the documents could not be revealed to anybody for any purpose other than preparation and trial of the underlying case, and, specifically, that the documents could not be disclosed to the public or to any governmental agency. Thereafter, the case was tried in open court, and testimony was received concerning the documents. Borg-Warner did not move for <u>in camera</u> proceedings or request any other restriction. After the trial, a vice president of one of the parties was accused of disclosing to others information covered by the protective order. A district court held that a contempt of court had occurred, but the Sixth Circuit reversed. In substance, the Court held that anyone had a right to obtain and publish information made a part of the record without restriction in a judicial proceeding.

U.S. West stresses, by contrast, that the particular documents involved in this case were subject not merely to pretrial restrictions, but, by reason of paragraph 14, continued to be subject to the protective order after trial. On this view, the fact that the documents were offered into evidence in open court without restriction is irrelevant. Anyone who happened to be in court could have learned of the documents, and, after the trial, anyone coming to the Clerk's office could have looked at them and even taken away copies of them, but paragraphs 4 and 14 would still prevent dissemination of the information by any such persons, even to a governmental agency in a public proceeding. Underlying this position is a practical proposition: the likelihood that anybody would come to the Clerk's office to look at the documents, without intending to disseminate them, is small. As a practical matter, therefore, filing the documents with the FCC gave them much wider exposure.

We find it unnecessary to pursue the First Amendment and case-law arguments urged by the parties. Contempt of court is a serious matter, even civil contempt. No one should be held in contempt for violating an ambiguous order, especially an order purporting to restrict the right of the public to see public records and documents. A contempt should be clear and certain. See International Longshoremen's Assn., Local 1291 v. Philadelphia Marine Trade Association, 389 U.S. 64, 76 (1967); Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991) ("civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous"). Here, the presence of paragraph 9, which is not addressed in appellees' brief, makes the order ambiguous. We think a reasonable person could have read the order as a whole not to give continuing protection to documents that had been offered into evidence in open court without objection. On this reading, the continuing-effects provisions of paragraph 14 would apply only to those documents not offered in open court or identified as exhibits. These documents would continue to be confidential and, in fact, the Clerk of the District Court seems to have acted accordingly, because only documents not offered in open court or listed as exhibits remained under seal in the Clerk's office.

U.S. West relies on Kehm v. Procter & Gamble Mfg. Co., 724 F.2d 630, 631 (8th Cir. 1984), aff'g per curiam 580 F. Supp. 913 (N.D. Iowa 1983). There, an attorney distributed documents in violation of a protective order. The documents had been introduced into evidence at trial, but a contempt finding was nevertheless upheld. We think the case is distinguishable. So far as the reported opinions in Kehm reveal, there was no provision in that case comparable to paragraph 9 of this protective order. The order gave U.S. West a specific remedy by which it could have maintained, after trial, the special status of documents even after they had been received into evidence. For these reasons, we think that Cottonwood could reasonably, even if perhaps erroneously, have believed that these documents were not subject to paragraph 14.

Accordingly, the judgment of the District Court, finding Cottonwood in civil contempt, is reversed, and this cause is remanded to that Court with directions to

dismiss the motion for contempt with prejudice.  In addition, the contempt bond of $4,500.00 is discharged and exonerated.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.